# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# JONESBORO DIVISION

JEFFERY L. CAYTON                                                                                    PLAINTIFF

v.                              NO. 3:15-cv-00297 JLH/PSH

MIKE ALLEN, RON COLEMAN,                                                                      DEFENDANTS
and DEWAYNE SMITH

## FINDINGS AND RECOMMENDATION

### INSTRUCTIONS

The following proposed Findings and Recommendation have been sent to United States District Judge J. Leon Holmes. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

FINDINGS AND RECOMMENDATION

INTRODUCTION. The defendants who remain in this case have filed the pending motion for summary judgment. See Document 33.[1] For the reasons that follow, the undersigned recommends that the motion be granted, this case be dismissed with prejudice, and judgment be entered for all of the defendants.

PLEADINGS. Plaintiff Jeffrey L. Cayton ("Cayton") commenced the case at bar by filing a complaint pursuant to 42 U.S.C. 1983 and joining Mike Allen ("Allen"), the Crittenden County Sheriff; Ron Coleman ("Coleman"), a jail administrator at the Crittenden County Detention Center ("Detention Center"); and Dewayne Smith ("Smith"). In the complaint, Cayton alleged that while he was confined at the Detention Center, the following occurred:

> I was beat[en] in my cell block while asleep, I was not found for over eight hours, by another inmate that serves chow [at] 5 p.m. or after, I was then transported to the Memphis Trauma Center. [A]lso when I was released and brought back to the jail, the medical [personnel] did not do the proper care.

See Document 2 at CM/ECF 4. In the relief portion of the complaint, Cayton asked for help "get[ting] my health back and fix[ing] what was damaged." See Document 2 at CM/ECF 5.

---

[1] The defendants appear to have filed their motion pursuant to Federal Rule of Civil Procedure 56. The rule provides, in part, that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

The undersigned screened Cayton's complaint and recommended that his claims against Smith be dismissed without prejudice because Cayton made no allegation implicating Smith in the alleged wrongdoing. Moreover, there was no evidence that Smith was a state actor. United States District Judge J. Leon Holmes adopted the recommendation and dismissed Smith as a party to this proceeding. See Document 22.

Allen and Coleman thereafter filed a motion for partial summary judgment. In the motion, they maintained that they were entitled to judgment as a matter of law on two of Cayton's claims, i.e., his claims that he was assaulted and left in his cell for several hours. Allen and Coleman so maintained because Cayton had failed to exhaust his administrative remedies with respect to the claims. Allen and Coleman conceded, though, that Cayton had exhausted his administrative remedies with respect to his claim relating to the medical care he received following the attack. The undersigned recommended that the motion be granted and Cayton's claims that he was assaulted and left in his cell for several hours be dismissed without prejudice. Judge Holmes adopted the recommendation and dismissed the claims without prejudice. See Document 37.

Allen and Coleman have now filed the pending motion for summary judgment. See Document 33. In the motion and an accompanying brief, Allen and Coleman maintain that they are entitled to judgment as a matter of law. They so maintain, in part, because Cayton has failed to show that they were deliberately indifferent to his serious medical need.

Cayton was notified of his right to file a response to Allen and Coleman's motion for summary judgment. Cayton filed nothing in response to the motion, and the time for doing so has now passed.

FACTS. Allen and Coleman filed a statement of material facts as required by Local Rule 56.1(a). Cayton filed nothing in response. Because Cayton did not controvert the facts contained in the statement, those facts are deemed admitted. See Local Rule 56.1(c). Allen and Coleman's statement, and the pleadings and exhibits in the record, establish that the material facts are not in dispute. Those facts are as follows:

1. On October 9, 2014, Cayton was taken into custody and confined at the Detention Center. See Document 35 at CM/ECF 1.

2. During the early morning hours of April 5, 2015, he was attacked and beaten in his cell by another inmate. See Document 35 at CM/ECF 1; Document 35, Exhibit A-1 at CM/ECF 5.

3. Detention Center officials did not learn of the attack until approximately 5:00 p.m. on the evening of April 5, 2015, when it was reported to them by another inmate. See Document 35 at CM/ECF 1; Document 35, Exhibit A-1 at CM/ECF 5.

4. Emergency Medical Technicians ("EMTs") were summoned to the Detention Center, and they transported Cayton to the Regional One Health Hospital ("Hospital"). See Document 35 at CM/ECF 1; Document 35, Exhibit A-1 at CM/ECF 5.

5. An admission form reflects that Cayton was admitted to the Hospital at 6:04 p.m. on April 5, 2015. See Document 35, Exhibit B at CM/ECF 2.

6. Cayton underwent a CT scan, and it revealed "multiple facial fractures, left orbit and right maxillary, ethmoid, and sphenoid sinus fractures." See Document 35 at CM/ECF 1; Document 35, Exhibit B at CM/ECF 3.

7. An examination also revealed a "left subconjunctival hemorrhage and some blurred vision." See Document 35, Exhibit B at CM/ECF 3.

8. The fractures were deemed "non-operative," and he was treated for his pain. See Document 35, Exhibit B at CM/ECF 3.

9. Cayton remained at the Hospital until April 7, 2015, when he was discharged and returned to the Detention Center. See Document 35 at CM/ECF 1; Document 35, Exhibit B at CM/ECF 3.

10. A discharge summary reflects that he was to follow-up at an ENT clinic in one week, an orthopedic clinic in two weeks, and an eye clinic in seven to fourteen days. See Document 35 at CM/ECF 1; Document 35, Exhibit B at CM/ECF 3.

11. Marni Dickerson ("Dickerson") represents, and the undersigned accepts as true, that upon Cayton's return to the Detention Center, the following occurred:

> On April 9, 2015, I attempted to schedule follow up appointments with medical specialists for Cayton. I was informed Cayton needed a referral letter from a primary care physician ("PCP") in order to schedule the appointments. I contacted East Arkansas Family Health Center on April 9, 2015 to get them to set up one of its physicians as Cayton's PCP so he or she could write the referral letters to Cayton's medical specialists. I scheduled an appointment for Cayton to go to the East Arkansas Family Health Center on April 15, 2015 so the PCP could evaluate Cayton and write the referral letters for Cayton's medical specialists.

> On April 11, 2015, Cayton completed a "Detainee to Staff Communication Form" to medical in which he stated that he had a large crack going down from his left eye and that he was supposed to see a doctor when he came back from the hospital.
>
> I am familiar with Mandy Childress' handwriting as I have seen it numerous times as part of my work as a nurse at the detention center. Mandy Childress, another nurse at the detention center, responded to Cayton's "Detainee to Staff Communication Form" on April 13, 2015, and advised Cayton that follow up appointments had been scheduled as directed by the hospital. Childress also offered Cayton a liquid diet when she met with him on April 13, 2015, and he refused.
>
> On or about April 16, 2015, Cayton was transported from the detention center to the East Arkansas Family Health Clinic where he was evaluated by Dr. Holi Banks-Giles. Dr. Banks-Giles prepared referral correspondence for Cayton to the Medical Center Med Plex in Memphis, TN to be evaluated by an Ear, Nose, and Throat specialist, a neurosurgery specialist, and [an] orthopaedic specialist.
>
> Cayton received medication (augmentin and ultram) at the detention center from April 8, 2015, through April 14, 2015, and April 15, 2015, respectively.

See Document 35, Exhibit C at 1-2.

12. On April 21, 2015, Cayton was released from the Detention Center after signing a bond. See Document 35 at CM/ECF 1, 2.

ANALYSIS. A prisoner's challenge to his medical care is analyzed under the Eighth Amendment. See Gregoire v. Class, 236 F.3d 413 (8th Cir. 2000). He must show that the defendants acted with deliberate indifference, i.e., that the defendants knew of but disregarded a prisoner's serious medical need. See Saylor v. State of Nebraska, 812 F.3d 637 (8th Cir. 2016). If, however, the person is a pre-trial detainee, his challenge to his

medical care is analyzed under the Fourteenth Amendment. See Vaughn v. Greene County, Arkansas, 438 F.3d 845 (8th Cir. 2006). Although the Court of Appeals has yet to establish a clear standard for adjudicating challenges by pre-trial detainees, the Court of Appeals has "repeatedly … applied the same 'deliberate indifference' standard as is applied to Eighth Amendment claims made by convicted inmates." See Id. at 850.

Cayton's sole remaining claim is a challenge to the medical care he received following the attack. Was he a prisoner at the time of the attack or a pre-trial detainee? It is not clear from the record, although it appears more likely than not he was a pre-trial detainee because he was released from the Detention Center on April 21, 2015, after signing a bond. Although correctly identifying his status as either a prisoner or pre-trial detainee is not critical in resolving this case as the same analysis is involved, the undersigned finds that he was a pre-trial detainee. Cayton must show that Allen or Coleman was deliberately indifferent, i.e., Allen or Coleman knew of but disregarded Cayton's serious medical need.

Allen and Coleman maintain that they are not medical professionals and do not provide medical treatment to inmates at the Detention Center. See Document 35 at CM/ECF 2. They additionally maintain the following: "The [D]etention [C]enter has a medical staff that evaluates, treats, and refers inmates for medical treatment, and it is the custom and practice for non-medical [D]etention [C]enter staff … to reply upon the [D]etention [C]enter medical staff to address inmate medical issues." See Document 35 at CM/ECF 2.

The undersigned credits Allen and Coleman's representations and finds that Allen and Coleman provide no medical care to inmates at the Detention Center and rely upon the medical staff to provide medical care. With specific regard to the case at bar, the undersigned finds that Allen and Coleman were not involved in the medical decisions made by the medical staff following the attack on Cayton. Given Allen and Coleman's status as non-medical personnel, Cayton must show that Allen or Coleman "personally participated in or had direct responsibility for the alleged violations," or that Allen or Coleman actually knew of, were deliberately indifferent to, or tacitly authorized the unconstitutional acts. See Saylor v. State of Nebraska, 812 F.3d at 644.

Applying the foregoing law to the facts of this case, Cayton's claim warrants no relief for at least two reasons. First, Cayton has failed to show that Allen or Coleman personally participated in, had direct or actual knowledge of, were deliberately indifferent to, or tacitly authorized Cayton's alleged failure to receive adequate medical care following the attack. There is no evidence Allen or Coleman attempted to prevent the EMTs from being summoned to the Detention Center following the attack or attempted to prevent the EMTs from transporting Cayton to the Hospital in a timely fashion. There is also no evidence that Allen or Coleman attempted to delay Cayton's follow-up appointments in the days after he returned to the Detention Center. Cayton's medical care appears to have been primarily overseen by Dickerson. There is no evidence Allen or Coleman interfered with Dickerson's efforts to schedule follow-up appointments for Cayton or interfered with him actually keeping the appointments.

Second, Cayton has failed to show that Allen or Coleman knew of, but disregarded, Cayton's serious medical need.[2] To the contrary, the facts establish that Cayton's medical need was addressed in an appropriate manner. Detention Center officials learned of the attack at approximately 5:00 p.m. on the evening of April 5, 2015. EMTs were summoned, and Cayton was admitted to the Hospital within seventy-five minutes. He remained at the Hospital for two days, after which he was discharged and returned to the Detention Center. On the same day Cayton returned, Dickerson began attempting to schedule follow-up appointments for Cayton. Dickerson experienced some difficulty scheduling the appointments, but it was through no fault of her own. While Cayton was waiting to be seen by a primary care physician, the medical staff at the Detention Center provided Cayton with medication for his pain. A referral was eventually obtained for Cayton, and he was seen for his follow-up appointments.

RECOMMENDATION. There is no genuine dispute as to any material fact, and Allen and Coleman are entitled to judgment as a matter of law.[3] Their motion for summary judgment should therefore be granted. Cayton's complaint should be dismissed with prejudice, and judgment should be entered for all of the defendants.

---

[2] It is undisputed that Cayton had a serious medical need.

[3] The undersigned has not addressed Allen and Coleman's other reasons for seeking judgment as a matter of law. To the extent the undersigned should address the reasons, they warrant relief for two reasons. First, Cayton has failed to show that a constitutional violation occurred as a result of an official custom, policy, or practice. See Luckert v. Dodge County, 684 F.3d 808 (2012). Allen and Coleman are also entitled to qualified immunity because Cayton has failed to show that the facts, viewed in the light most favorable to him, demonstrate the deprivation of a constitutional or statutory right. See Saylor v. State of Nebraska, supra.

DATED this 27th day of October, 2016.

_____
UNITED STATES MAGISTRATE JUDGE